# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**LARRY J. UTLEY, II,**

    Petitioner,

v.

**UNITED STATES OF AMERICA,**

    Respondent.

CASE NO. 2:10-CV-1186
CRIM. NO. 2:08-CR-114(1)
JUDGE GRAHAM
MAGISTRATE JUDGE ABEL

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the instant motion, Respondent's *Return of Writ*, and the exhibits of the parties. Petitioner challenges his convictions made pursuant to his negotiated guilty plea on various counts of conspiracy and possession with intent to distribute schedule II controlled substances and entering a business premises registered with the drug enforcement administration with intent to steal a controlled substances. Petitioner asserts he was promised he would serve no more than 115 months imprisonment, and that he was denied effective assistance of counsel. For the reasons that follow, the Magistrate Judge concludes that Petitioner's assertions are unsupported by the record and without merit and therefore **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

Petitioner's December 15, 2008, underlying criminal convictions on one count of conspiracy to distribute and possess with intent to distribute schedule II controlled substances, two counts of possession with intent to distribute schedule II controlled substances, and four counts of entering a business premises registered with the drug enforcement administration with intent to steal a

controlled substance, are the result of his negotiated guilty plea. *See* Docs. 67, 77, 91. On September 4, 2009, he was sentenced to 115 months imprisonment, such sentence to be served consecutively to the sentence imposed in the state court, plus three years supervised release. Doc. 146. Petitioner did not file an appeal.

On December 30, 2010, Utley filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. He asserts he was denied effective assistance of counsel because his attorney failed to object to the breach of his plea agreement, as he was promised a sentence of less than 115 months (claim one); denied the effective assistance of counsel because his attorney failed to object to the improper calculation of his criminal history points (claim two); and that he was denied the effective assistance of counsel because his attorney failed to file an appeal after Petitioner requested him to do so (claim three). *See* Doc. 169. It is the position of the Respondent that Petitioner's claims are without merit.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In response to Petitioner's allegations of ineffective assistance of counsel, Respondent has provided an affidavit from Attorney Gerald T. Noel, which indicates in relevant part as follows:

> I am a lawyer, specializing in criminal defense. . . .
>
> I was the attorney for Larry Utley. . . . I was the attorney throughout his guilty plea and sentencing.
>
> Judge Graham addressed Larry Utley in open Court, informing him of his right to appeal the Judge's sentence. After conferring with me in open court, Utley indicated he did not want to appeal his sentence. I informed the Court of this fact. . . .
>
> \*\*\*
>
> I never said that the Assistant U.S. Attorney breached the plea agreement. I never told Utley that he was promised a sentence of 115

2

> months. Utley was upset after the sentencing because he expected, per the joint recommendation, to receive concurrent time with his state sentence. However, in our conversations after the sentencing I indicated and showed him examples of where the Assistant U.S. Attorney had recommended the sentence that was agreed to. Utley was clear that the prosecution and I could only recommend sentences, but that the final sentencing decision was up to the Judge.

*Affidavit of Gerald T. Noel.*

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir.1988). To obtain relief, a prisoner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill,* 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

Additionally, because a criminal defendant waives numerous constitutional rights when he enters a plea of guilty, any plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). " 'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses

of action open to the defendant.' " *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir.1988) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). In applying this standard, the court must look at the totality of circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).

A criminal defendant cannot successfully challenge the voluntariness of his or her plea simply because the government is responsible for some of the factors motivating him or her to plead. *Brady v. United States,* 397 U.S. 742, 750 (1970). However, the prosecutor must keep any promises he or she made in the plea agreement. *Bordenkircher v. Hayes,* 434 U.S. 357, 362 (1978). When a prisoner challenges his guilty plea on the basis that it was induced by an unkept promise, the Court must determine whether the allegation, when viewed against the record of the plea hearing, is so palpably incredible, so patently frivolous or false, as to warrant a summary dismissal. *Blackledge v. Allison,* 431 U.S. 63, 76 (1977). In applying this standard, the Court will indulge a strong presumption that statements made by the parties at the plea hearing were truthful. *Id.* at 74.

While represented by counsel, on October 30, 2008, Petitioner signed a guilty plea agreement indicating he agreed to plead guilty to counts one through three, six through ten and count twelve of the superseding indictment. *Plea Agreement*, Doc. 67. The plea agreement set forth the maximum sentence that could be imposed on each of these charges, and Petitioner indicated that he understood. The government agreed to dismiss counts four, five, eleven, and thirteen through sixteen of the superseding indictment, and not to file any additional charges against Petitioner based on these charges. *See id.* Petitioner indicated he understood the District Court had authority to impose any sentence within the statutory maximum(s), that no sentence had yet been determined, and that any estimate of a probable sentencing range he may have received was only a prediction,

not a promise, and was not binding. *Id*. Petitioner agreed to surrender to the United States all proceeds required as a result of the criminal activity alleged and stipulated that specific cash and property referred to in the *Plea Agreement* constituted proceeds of criminal activity. The United States agreed that, if Petitioner provided substantial assistance, the United States Attorney may move for a downward departure from the sentencing guidelines under 18 U.S.C. § 3553(e) or § 5K1.1. Defendant indicated he understood that the United States Attorney had sole discretion as to whether such a motion would be filed and the District Court had sole discretion regarding whether or to what extent such a motion may be granted. *Id.* Petitioner expressly acknowledged, "no additional promises, agreements or conditions" had been or would be made unless in writing and signed by all parties. *Id.*

At the time of Petitioner's guilty plea hearing, Petitioner indicated he was satisfied with his attorney. *Guilty Plea Transcript*, at 3, 6. It was his desire to enter a guilty plea. *Id*. He understood the nature of the charges against him. *Id.* at 6. His attorney had fully advised him regarding the nature of the charges and any defenses he might have. *Id*. The Court advised Petitioner of the elements of the offenses to which he was pleading guilty. Id. at 7-8. Petitioner indicated he understood. The Court advised him of the maximum penalties he faced. Id. at 9-11. Petitioner understood that the District Judge could impose the same penalties as if he had proceeded to jury trial. *Id.* at 11. The Court advised him of, and Petitioner indicated he understood, all of the rights he was waiving by entry of his guilty plea. *Id*. at 11-15. His attorney had advised him how the advisory sentencing guidelines might apply in his case, but he understood that the District Judge had authority to impose a sentence more or less severe than that recommended under the United States Sentencing Guidelines, and if he imposed a sentence more severe than that which was expected he

would have no right to withdraw his guilty plea. *Id*. at 12-13. The prosecutor summarized the terms of Petitioner's negotiated guilty plea agreement. *Id.* at 15-22. Petitioner and his attorney agreed with the stated terms. *Id*. at 22. He stated no one had made any different promises or assurances of any kind to induce his guilty plea. *Id*. No person had promised or even suggested that he would receive a lighter sentence or any other form of leniency if he pleaded guilty. *Id.* at 23. No one had threatened or forced him to plead guilty. *Id.* The prosecutor summarized the facts as follows:

> During 2007 throughout March, 2008, Columbus division of police and the Columbus Drug Enforcement Administration investigated numerous pharmacy burglaries in and around the Columbus, Ohio, area. Investigators discovered that Larry J. Utley, II, and his associates committed these crimes. Mr. Utley and his associates were recorded on pharmacy surveillance cameras during the commission of many of the burglaries. Utley and one or more of his associates were together during a traffic stop in which large amounts of cash and pharmaceutical controlled substance were seized by law enforcement.
>
> Specifically, on January 12, 2007, Mr. Utley and William Smith, a co-defendant, broke into the Mediserv Pharmacy located at 100 North Murray Hill . . . Road, Columbus, Ohio. They entered through the front of the pharmacy and entered where the scheduled drugs were stored. This was captured on the store's surveillance cameras. They stole scheduled narcotics, including but not limited to, various forms of oxycodone, percocet, Endocet, morphine and Kadian, the replacement cost to the pharmacy was more than $500.
>
> On February 13, 2008, Mr. Utley and co-defendant, William Smith, broke into the Walgreen's located at 5195 North Hamilton Road, Columbus, Ohio. They entered through the front door of the pharmacy, and entered the area where scheduled drugs were stored. This was captured on the store's surveillance cameras. They stole scheduled narcotics, including but not limited to, amphetamine, methadone, methylphenidate, morphine, oxycodone, the replacement cost of the controlled substances to the pharmacy was more than $500.
>
> On February 22, 2008, at 3:10 a.m., Utley and a co-defendant, Eric Hutson, broke into the Walgreen's pharmacy located at 4890 North

6

High Street. They broke into the front door, and entered the pharmacy area. This was captured on the store's surveillance cameras. They stole scheduled drugs, including amphetamines, methadone, methylphenidate, morphine, oxycodone and oxymorphone. The replacement value of these drugs, to the pharmacy, was more than $500. Mr. Utley and Mr. Hutson possessed the schedule drugs with the intent to distribute them to another person.

Also on February 22, 2008, at 5:18 a.m. Mr. Utley and co-defendant Eric Hutson broke into the Walgreen's located at 5555 New Albany Road in Columbus, Ohio. They broke in the front door and entered the pharmacy area. This was captured on the store's surveillance cameras. They stole scheduled drugs including various forms of amphetamine, fentanyl, hydromorphone, methadone, methylphenidate, morphine and oxycodone. The replacement value of these drugs, to the pharmacy, was more than $500. Mr. Utley and Mr. Hutson possessed the schedule drugs with the intent to distribute them to another person.

Of the numerous pharmacy burglaries in and around the Columbus, Ohio, area, and Utley and members of his conspiracy were responsible for, the marijuana equivalent of the Schedule II drugs that were stolen, was less than 1,000 kilograms.

Each of the pharmacies are registered with the Drug Enforcement Administration.

Drugs taken from these pharmacies were packaged and sold by Larry Utley for profit. Money was then distributed by Mr. Utley to the other persons who were involved in each particular break-in. Some of the proceeds are represented by forfeiture items in Counts 9 and 10 of the indictment. This includes:

$3,320 U.S. currency that was seized on or about February 22, 2008, on Larry Utley's person during a traffic stop in the area of 2215 Perdue Avenue, Columbus, Ohio;

$19,000 in U.S. currency seized on or about March 19, 2008, from a Dodge Durango during a traffic stop off of 71 northbound at 11th Avenue, Columbus, Ohio;

$6,340 in U.S. currency seized on or about April 18, 2008, from the residence of Larry Utley and Sherika Moore at 7238 Linda Trace,

>Columbus, Ohio;

>And 14 pieces of jewelry and one watch seized from Moses Jewelers on June 4, 2008.

*Id*. at 24-27. Petitioner agreed with this statement of facts. *Id.* at 29. He admitted his guilt. *Id*. at 29-30.

At his sentencing hearing,[1] Petitioner indicated he had received a copy of his *PreSentence Investigation Report,* and had reviewed and discussed it with his attorney. *Sentencing Transcript*, at 3. The probation officer had calculated a recommended guideline sentence of 210 to 262 months imprisonment, with a total offense level of 33 and a criminal history category of V. *PreSentence Investigation Report*. At the recommendation of the Assistant United States Attorney and based on Petitioner's acceptance of responsibility, the District Court reduced Petitioner's total offense level to 29 with a criminal history of V, corresponding to a recommended guideline sentence of 140 to 175 months imprisonment. *Id*. at 17. The Court granted the government's request for a five-level departure from the recommended sentence, reducing Petitioner's total offense level to 24, with a corresponding recommended guideline sentence of 92 to 115 months imprisonment. *Id.* at 24-25. The government requested the Court to order Petitioner's sentence to be served concurrently with his state sentence, on which Petitioner already was serving four years. *Id.* at 25. The District Court nonetheless imposed 115 months incarceration to run consecutive to Petitioner's sentence in the state court plus three years supervised release. *Id.* at 28-29.

Petitioner has failed to establish he was denied effective assistance of counsel based on his attorney's failure to object to any alleged breach of his guilty plea agreement, or that his guilty plea

---

[1] Petitioner's sentencing was continued for the presence of the Assistant United States Attorney that had been assigned to this case. *See* Doc. 193.

was not knowing, intelligent or voluntary based on the alleged promise that he would receive less than 115 months incarceration. Petitioner explicitly acknowledged, at the time of his guilty plea hearing and by the terms of his signed plea agreement, that he understood that his sentence would be determined by the sentencing judge, and imposition of any sentence beyond that which he expected would not constitute grounds for withdrawing his guilty plea. He denied being made any other promises than those set forth in his *Plea Agreement*, which made no mention of any particular sentence.

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison,* 431 U.S. at 74. Petitioner's allegation of an off-the-record promise of a sentence less than 115 months is unworthy of credit in view of the record. As discussed by the United States Court of Appeals for the Sixth Circuit,

> [p]lea bargaining "is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971). It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties. . . . To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards.

*Warner v. United States,* 975 F.2d 1207, 1212 (6th Cir. 1992). Absent extraordinary circumstances or some explanation by Petitioner as to why he did not previously reveal, particularly when he was specifically asked to do so, an undisclosed promise, Petitioner's plea agreement is consists of those

9

terms revealed in open court. *Id*.

Petitioner complains that his attorney failed to object to the calculation of his prior criminal history which, he alleges, was incorrect. Petitioner fails to indicate, however, in which of his prior convictions are at issue, or in what manner defense counsel could have successfully argued that his prior criminal history points had been improperly calculated, nor is it apparent from the record. He has failed to establish the ineffective assistance of counsel on this basis.

Petitioner asserts he was denied effective assistance of counsel because his attorney failed to file a notice of appeal. Petitioner asserts that after he received a sentence of 115 months he told his attorney to file an appeal, and his attorney failed to do so. *See Petition*. The failure of an attorney to file a timely appeal upon the defendant's request constitutes ineffective assistance of counsel.

> [E]very Court of Appeals that has addressed the issue has held that a lawyer's failure to appeal a judgment, in disregard of the defendant's request, is ineffective assistance of counsel regardless of whether the appeal would have been successful or not. *See Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir.1994); *United States v. Peak*, 992 F.2d 39, 42 (4th Cir.1993); *United States v. Horodner*, 993 F.2d 191, 195 (9th Cir.1993); *Bonneau v. United States*, 961 F.2d 17, 23 (1st Cir.1992); *United States v. Davis*, 929 F.2d 554, 557 (10th Cir.1991); *Williams v. Lockhart,* 849 F.2d 1134, 1137 n. 3 (8th Cir.1988). We agree with those courts and hold that the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment.

*Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir.1998).

> [A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *See Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); cf. *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit"). This

10

> is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.

*Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). Here, however, the record reflects the District Court advised Petitioner of his right to file an appeal and the time limit for doing so. Petitioner indicated he had no interest in filing an appeal:

> COURT: Mr. Utley, you have the right to appeal your sentence and conviction. You have the right to have a lawyer appointed for that purpose. You have the right to have the cost of any such appeal paid for by the government, and you also have the right to have the clerk of court file a notice of appeal on your behalf. Please consult with Mr. Nowel and tell me whether you want the clerk to file a notice of appeal.
>
> \*\*\*
>
> COURT: Does the defendant wish the clerk to file a notice of appeal?
>
> \*\*\*
>
> MR. NOEL: He would not like to appeal, Your Honor.
>
> COURT: Mr. Utley, if you do desire and intend to appeal, you must file a written notice within ten days. Do you understand that, sir?
>
> DEFENDANT: Yes, sir.

*Sentencing Transcript*, at 31-33.

Again, the record fails to support Petitioner's allegation that he wanted to file an appeal. Utley's affidavit states that "Attorney Gerald Thomas Noel, Jr., didn't file my notice of appeal." Further, Noel "assure[d] me that he would handle both [my state and federal] case[s] until the very end." Larry J. Utley III's March 9, 2011 Affidavit, ¶¶ 3 and 5, Doc. 175-1, PAGEID # 686. The affidavit gives no specifics. It does not say when Utley asked Noel to appeal, nor does it indicate

11

they ever discussed whether there were any grounds for appeal. As discussed above, he had no arguable grounds for an appeal, so his attorney had no reason to think Utley wanted to file an appeal. Utley was understandable disappointed that the 115 month sentence ran consecutive to his four year state court sentence, but he knew when he pleaded guilty that the judge did not have to follow the prosecutor's recommendation that the sentences run concurrently. His sentence was within the Guideline range, and the judge followed all the recommendations in the plea agreement except that the federal sentence be serviced concurrently with the state sentence. The Magistrate Judge is not persuaded, in view of the record, that Petitioner can establish the ineffective assistance of counsel due to his attorney's alleged failure to file an appeal.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court

adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

s/ Mark R. Abel  
United States Magistrate Judge
